## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | |
|---|---|
| **STEVE SOUTH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )  **Case No.:** |
| v. | ) |
| | )  **REQUEST FOR JURY TRIAL** |
| **JOHNSON COUNTY, KANSAS,** | ) |
| | ) |
| **Defendant.** | ) |

Serve County Manager:
Penny Postoak Ferguson
111 S. Cherry Street, Suite 3300
Olathe, Kansas 66061

## **COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff, Steve South, and for his claims against the above-named Defendant, alleges and states as follows:

1. Plaintiff is, and at all times set forth below was, a resident of Olathe, Kansas.

2. Defendant is a political subdivision of the State of Kansas, organized under the laws of Kansas, with its county seat in Olathe, Kansas.

3. Defendant is a "public agency," as defined by 29 U.S.C. § 203(x) and incorporated by Section 29 U.S.C. § 2611(4)(A)(iii).

4. Defendant provides services, including transportation for mental health patients, which affect interstate commerce.

5. Defendant employed fifty of more employees for each working day during the at least twenty calendar weeks in either 2017 or 2018.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiff is bringing a civil action arising under the laws of the United States,

particularly, the Family Medical Leave Act, Americans with Disabilities Act, and Age Discrimination in Employment Act.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff was hired by Defendant in or about January 1998.

8. Plaintiff was first hired to work as a driver, transporting mental health patients to various facilities and activities.

9. Plaintiff worked at this position for several years and was very successful.

10. Plaintiff suffered an injury to his hip in approximately 2006, ultimately resulting in Plaintiff having a hip replacement.

11. Plaintiff utilized time off pursuant to the Family Medical Leave Act ("FMLA") to recover from this procedure.

12. Plaintiff returned to work following this procedure and ultimately became a driver and dispatcher.

13. In approximately 2013, Plaintiff's supervisor changed to Corey Stoltz.

14. Initially, Plaintiff had a good working relationship with Stoltz.

15. However, another older driver, Brian Ashcroft, was eventually transferred in to the department.

16. Ashcroft was approximately a year older than Plaintiff.

17. After Ashcroft's transfer, Stoltz began treating both Plaintiff and Ashcroft less favorably than other younger drivers.

18. As the most experienced driver and a dispatcher, Plaintiff would often be consulted by less experienced drivers concerning routes, paperwork, and other aspects of the driver position.

19. However, Stoltz began instructing these drivers not to ask Plaintiff any questions.

20. Stoltz would encourage other drivers to avoid Plaintiff altogether.

21. In one instance, a driver was asking Plaintiff about an alternate route to avoid construction.

22. Stoltz stopped the conversation and announced to the entire transportation office: "Steve South is not your boss. I'm the boss."

23. Stoltz never stopped drivers from asking similar questions to other younger drivers.

24. Following these occurrences, drivers would go as far as to ask Plaintiff questions in hushed voices so Stoltz wouldn't notice.

25. Stoltz would also interrupt Plaintiff while he was on the phone with clients or facilities.

26. Stoltz never interrupted other drivers or dispatchers while they were on similar phone calls.

27. Stoltz would also call great attention to any mistakes made by Plaintiff or Ashcroft.

28. Rather that address such mistakes in private or at a normal volume level as Stoltz did with other drivers, Stoltz would speak loudly and draw attention to Plaintiff or Ashcroft when Stoltz corrected even the smallest mistakes.

29. These spectacles caused great embarrassment for both Plaintiff and Ashcroft.

30. In early 2018, Plaintiff began experiencing pain in his hip and right leg again.

31. Ultimately, Plaintiff would learn that the stem of his hip replacement had fractured and would need to be fully replaced.

32. In March 2018, Plaintiff began utilizing a walker to ambulate.

33. Plaintiff was still able to drive.

34. Once Plaintiff began using the walker, Stoltz became even more aggressive in her hostile treatment of Plaintiff.

35. Stoltz asked Plaintiff, "Why do you even need that thing?" and "What's wrong with you now?"

36. Shortly after Plaintiff began utilizing the walker, Stoltz announced that she would be taking a brief medical leave in April 2018.

37. Plaintiff told Stoltz before her leave that Plaintiff would require more medical treatment because of the increased pain he was experiencing in his hip area.

38. Plaintiff told Stoltz that he would wait until Stoltz returned to work before Plaintiff scheduled a procedure and would utilize FMLA leave for his recovery.

39. Stoltz went on her medical leave as schedule in early April 2018.

40. While Stoltz was on leave, it became more and more painful for Plaintiff to ambulate, even with the assistance of the walker.

41. Plaintiff made several complaints regarding this pain to Ashcroft and Marla Gruendel, who had collectively assumed most of Stoltz' duties.

42. Plaintiff also told Ashcroft and Gruendel that Plaintiff may need to utilize FMLA leave prior to Stoltz returning, even though this would leave the transportation department extremely understaffed.

43. Shortly after making this comment, Plaintiff was placed on administrative

4

Case 2:19-cv-02225 Document 1 Filed 05/10/19 Page 5 of 10

leave.

44. Plaintiff was told he was being investigated for improper usage of Defendant's computers.

45. Specifically, Defendant was accusing Plaintiff of viewing pornography on Defendant's computer.

46. Plaintiff had never viewed pornography using Defendant's computers.

47. In fact, Defendant utilizes a firewall to prevent the viewing of such materials.

48. During this investigation, Plaintiff was interviewed by a three-person panel consisting of Tim DeWeese, Director of Mental Health Service for Defendant, Samantha l/n/u, a Human Resources representative, and an unknown male employee of Defendant.

49. Plaintiff denied ever viewing pornography when asked by the panel.

50. Plaintiff was shown an advertisement featuring a man and women in bathing suits.

51. Plaintiff protested that he had not been seeking out the advertisement.

52. Plaintiff protested that the advertisement had been a "pop-up" on an article about health for men over fifty.

53. It was not a violation of Defendant's internet policy to read such an article on a break.

54. Further, the advertisement was not "pornography" by any known standard.

55. Plaintiff also protested that he had never searched for nor sought out that image or any similar images.

56. Following this interaction, Plaintiff was never contacted by Defendant again

as part of the investigation.

57. On May 16, 2018, Plaintiff was called into a meeting with the same three individuals.

58. At that meeting, Plaintiff was told that he was being discharged from employment for violating Defendant's internet usage policy by viewing pornography.

59. Plaintiff again protested that his was untrue.

60. Plaintiff was told that Defendant considered the advertisements at issue to constitute "pornography."

61. Upon information and belief, Plaintiff's former position was replaced with an outside contractor.

62. Plaintiff's discharged ended Plaintiff's employer-provided medical insurance.

63. Plaintiff was forced to utilize the Consolidated Omnibus Budget Reconciliation Act (COBRA) to maintain medical insurance and undergo his scheduled procedure.

64. Plaintiff was forced to take a portion of his retirement savings out to pay for maintaining his medical insurance via COBRA, thereby reducing the amount of monthly benefits Plaintiff is entitled to receive throughout his retirement.

65. On or about February 5, 2019, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant had engaged in the continuing pattern of discriminatory actions being alleged in this lawsuit, or alternatively, all conduct alleged herein would have arisen from the investigation of such Charge of Discrimination.

66. A Notice of Right-to-Sue letter, dated February 20, 2019 was issued by the

EEOC and this action is being brought within ninety (90) days of the issuance of such Right-to-Sue letter.

67. Plaintiff has fulfilled all conditions precedent to the bringing of these claims and has duly exhausted all administrative procedures prior to instituting this lawsuit in accordance with the law.

68. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

### COUNT I - INTERFERENCE WITH RIGHTS GRANTED BY THE FAMILY MEDICAL LEAVE ACT, IN VIOLATION OF 29 U.S.C. § 2615 *et seq.*

69. Plaintiff was qualified to utilize medical leave pursuant to FMLA.

70. Defendant took actions which interfered with Plaintiff's right to take FMLA leave.

71. These actions include but are not limited to, making a false accusation against Plaintiff concerning his internet usage at work, suspending Plaintiff, and discharging Plaintiff.

72. Defendant's actions taken against Plaintiff were each based upon, and directly related to, Plaintiff's attempt and intention to exercise his FMLA rights.

73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including monetary loss, lost salary and wages, lost employment benefits, costs to replace employment benefits, and other compensation, as well as interest on these amounts calculated at the prevailing rate.

74. Defendant's actions were not performed in good-faith nor based on any

reasonable grounds, entitling Plaintiff to an additional award of liquidated damages.

75. Plaintiff is also entitled to recover his reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action from Defendant.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant for all damages allowable by law, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT II - AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 *et seq.*

76. Plaintiff was over the age of forty at the time of the adverse actions at issue in this lawsuit.

77. Plaintiff was subjected to a hostile work environment because of his age.

78. This hostility was created by Plaintiff's direct supervisor, and included ostracizing Plaintiff from his coworkers, criticizing Plaintiff, interrupting Plaintiff's work unnecessarily, and drawing tremendous attention to Plaintiff's honest mistakes in his work.

79. These actions were directed towards other employees over the age of forty, but never towards younger employees.

80. Defendant also took adverse employment actions against Plaintiff.

81. These adverse employment actions included but are not limited to unnecessarily interrupting Plaintiff's work and discharging Plaintiff from employment.

82. Plaintiff's age was the motivating factor in these adverse actions, including the hostile work environment created by Plaintiff's direct supervisor.

83. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain,

suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

84. Plaintiff is also entitled to recover his reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action from Defendant.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant for all damages allowable by law, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT III - DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq.*

85. Plaintiff suffered from a physical impairment that substantially limited his major life activities, including but not limited to the ability to ambulate without assistance.

86. Plaintiff further has a record of suffering from physical impairments that substantially limited his major life activities.

87. Despite this physical impairment, Plaintiff could perform the essential job functions of his position with reasonable accommodations, including the use of a walker to ambulate.

88. Plaintiff was subjected to a hostile work environment because of his disability.

89. This hostility was created by Plaintiff's direct supervisor, and included mocking Plaintiff's need for a reasonable accommodation and criticizing Plaintiff for requiring the use of a reasonable accommodation.

90. Plaintiff's disability was the motivating factor in hostile work environment

created by Plaintiff's direct supervisor.

91. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

92. Plaintiff is also entitled to recover all his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant in an amount that is fair and reasonable, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury in the United States District Court for the District of Kansas, to be held at the Robert J. Dole Federal Courthouse in Kansas City, Kansas, on all accounts and allegations of wrongful conduct alleged in this Complaint.

Respectfully submitted,

*/s/ Daniel L. Doyle*
Daniel L. Doyle, KS Bar No. 11260
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas  66101
Telephone:  (913) 371-1930, ext. 109
Facsimile:  (913) 371-0147
d.doyle@ddoylelaw.com
ATTORNEYS FOR PLAINTIFF